**UNITED STATES of America Plaintiff**

**v.**

**[1] Carlos AYALA LOPEZ [3] Jose A. Ramos Romero [6] Jose L. Medina Ortiz [9] Rafael Gonzalez Velez Defendants**

No. CR. 03–55(SEC).

United States District Court,
D. Puerto Rico.

May 17, 2004.

Juan A. Pedrosa–Trapaga, Esq., San Juan, PR, William D. Matthewman, Esq., Boca Raton, FL, José C. Romo–Martínez, Esq., José L. Barreto, Esq., San Juan, PR, for Plaintiff.

Daniel J. Vaccaro, U.S. Attorney's Office, Torre Chardón, San Juan, PR, for Defendants.

## ORDER

CASELLAS, District Judge.

Pending before the Court are several motions for severance filed by Co-defendant Carlos Ayala López (**Docket # 270**), José A. Ramos Romero (**Docket # 269**), and José L. Medina Ortiz (**Docket # 280**).[1] The Government has opposed all motions (**Docket # 285**). After carefully considering and weighing all the applicable factors presented by counsel, for the reasons stated herein, Defendants' motions to sever will be **GRANTED**.

### Procedural Background

This case posits a complicated scenario for the issue of severance as there are three remaining non-capital defendants as well as a Co-defendant, Carlos Ayala López, who if convicted, faces a possible sentence of death, and together with Co-defendants is charged with Counts One and Two of the Indictment,[2] but is the only defendant charged with Counts Three and Four. For this reason, this Court on December 25, 2003 determined that this was a complex case and, as such, held in abeyance the Speedy Trial Act's deadlines (**Docket # 204**). The present case is further compounded by the possibility that the Government may file a superceding indictment to include Male Juvenile E.L.C. who has appealed District Court Judge Hector Laffitte's ruling transferring him to adult status. The First Circuit has yet to assign a hearing date on his appeal.

### Applicable Law and Analysis

Rule 14(a) of the Federal Rules of Criminal Procedure provides that:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires.

Using the prejudice standard as a backdrop, courts have recognized the preference in the federal system to jointly try defendants who are indicted together. *See Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). This is increasingly so when it is charged that defendants have engaged in a conspiracy, as the case now before us. *See, e.g., United States v. Soto Benitez*, 350 F.3d 131, 159 (1st Cir.2003) ("Because conspiracy cases often involve evidence that is admissible against all members of the conspiracy, 'in the context of conspiracy, severance will rarely, if ever, be required.' ") (*quoting United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir.1998) (internal quotation marks and citations omitted)). Notwithstanding this preference, the Supreme Court has cautioned that "a district court should grant severance under Rule 14 ... if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about

1. Co-defendant Rafael González Vélez had previously moved for severance (**Docket # 242**). The same was denied on March 8, 2004 (**Docket # 261**). Co-defendant González's request for severance was part of an omnibus motion filed in contravention of this Court's Local Rules and the case management order issued for this case. In addition, Co-defendant's motion failed to cite any supporting authority. Finding no reason to make an exception to the general practice of denying severance, we denied Co-defendant's request. However, now that the issue has been properly briefed, we find that Defendants' severance requests raise issues of fairness and due process. As such, we tread lightly and reconsider the issue.

2. Count Two charges Co-defendants Ayala, Ramos, and Medina. Co-defendant González is not charged in this count.

guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

 Severance then falls under the discretion of the district judge. *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The First Circuit has reiterated that the trial judge has "considerable latitude" in deciding severance questions and that the judge's finding "will be overturned only if that wide discretion is plainly abused." *United States v. O'Bryant,* 998 F.2d 21, 25 (1st Cir.1993) ("[T]he district court is best able to gauge matters of joinder and severance because its first-hand exposure to a case gives it a unique ability to evaluate conflicting arguments, in a zoetic context, consider all the ramifications attendant to a defense motion, and strike the delicate balance between fending off prejudice, on the one hand, and husbanding judicial resources, on the other hand."). Thus, as dictated by the Supreme Court, to obtain a severance under Rule 14, Defendants must show either a "serious risk" of actual prejudice to a specific protected right or a likelihood that a jury would be unable to make a reliable decision in a joint trial. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

Our inquiry then shifts to balancing Defendants' rights with our indubitably overcrowded docket as well as the burden on the Government to essentially try this case twice. The non-capital Co-defendants argue that trying the cases jointly affects their rights to due process and a speedy trial and prejudices them in that they will be forced to present antagonistic defenses (an argument also raised by the capital Defendant) and try their case before a death-certified jury. They also argue that a joint trial will allow evidence, particularly, evidence related to the murder, to "seep" in, a point that is obliterated by the conspiracy charge. Co-defendant Ayala avers that a joint trial will infringe upon his right to individualized sentencing, that the non-capital Defendants may present evidence in their defense that will be damaging to him, that a joint trial will produce problems related to jury selection and efficiency, and that the time. and delay needed to prepare his capital defense will infringe upon the non-capital Defendants' rights to a speedy trial. The Government disagrees, arguing that Defendants' motions are based on statistics and hypothetical prejudices and fail to adequately articulate how a joint trial will impair their ability to receive a fair trial in front of a properly instructed jury.

As of this date, Defendants have been confined at MDC Guaynabo for over fourteen (14) months. Allotting the necessary time required to adequately prepare a capital case defense, and without any additional delays, this case will not be ready for trial until at least early 2005. When this case reaches trial, Defendants will have been confined for approximately two years, alarmingly in excess of the deadlines set by the Speedy Trial Act.

Although not necessarily antagonistic, a joint trial will necessarily result in Defendants pointing at each other in an attempt to exculpate themselves or ameliorate guilt. This alone is not a reason to grant severance. However, we are not blind to the fact that "the dangers inherent in joint trials become intolerable when the co-defendants become gladiators, ripping each other's defense apart. In their antagonism, each lawyer becomes the government's champion against the co-defendant, and the resulting struggle leaves both defendants vulnerable to the insinuation that a conspiracy explains the conflict." *United States v. Romanello,* 726 F.2d 173, 182 (5th Cir.1984). This danger is heightened given that no due process or prior notice requirements attach to Co-defendants, resulting essentially in the trial by ambush

that the modern discovery procedure rules and court orders to that affect were explicitly designed to prevent.

> While the defenses ... may not fully meet the mutually exclusive standard, there will be substantial and significant differences in the tactical approaches taken by their respective counsel. At times they will have different positions on evidentiary objections, and different approaches to the cross-examination of the government's witnesses and in the presentation of defense witnesses.

*United States v. McVeigh,* 169 F.R.D. 362, 370 (D.Colo.1996). After reading the submitted briefs on the issue of conflicting defenses, inclusively that of the capital Defendant, we are of the impression that the Defendants, both the capital Defendant as well as the non-capital Defendants, face an unacceptable risk of prejudice if tried together.

We are more skeptical, however, of the argument raised with regards to a death-certified jury. Moreover, as stated by the Government, this argument, in addition to being merely hypothetical, has been foreclosed by the Supreme Court. *See United States v. Sanchez,* 75 F.3d 603, 604 (10th Cir.1996) (affirming denial of severance claim by non-capital defendant based on allegations of being convicted by a partial, death-qualified jury because the argument had been foreclosed by the Supreme Court's decision in *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987)).

In addition to the previous points, the capital Defendant also argues that a joint trial will taint the capital sentencer in violation of his due process rights. In addition, he avers that the fact that he is the single capital Defendant will transmit to the jury the notion that he has been legally chosen by the Government for death and depicted as the most worthy of punishment. By analogy, he cites *Johnson v. Wainwright,* 778 F.2d 623 (11th Cir.1985), in which the Eleventh Circuit expressed that in a death penalty case, it is improper for a prosecutor to argue that his office seeks the death penalty only in a limited number of cases. "By suggesting that his office had already carefully selected Johnson as one who is particularly deserving of the death penalty, the prosecutor tended to undermine the jury's perception that it had unfettered discretion to decline to impose the death penalty." *Id.* at 631. As the single capital Defendant, he argues that he has been "targeted," hence creating a serious risk that the jury's verdict will not be reliable.

On the other hand of the equation, we must address concerns regarding efficiency and the public interest. The Government's contention that severance will contravene efficiency goals is a nonsequitur. There are advantages and costs with respect to efficiency on both sides of the coin. Efficiency, thus, is a double edged sword. Capital trials involve procedures and considerations foreign to non-capital trials, *inter alia,* the additional peremptory challenges and voir dire questioning. As the *McVeigh* Court, we are unable to conclude that the time required for two separate trials will be substantially greater than the time required for a joint trial. *McVeigh,* 169 F.R.D. at 370. Needless to say, when balancing life and judicial economy, we refuse to tilt the balance in favor of the latter.

Likewise, factoring in the public's interest, we note that severance does not necessarily hamper the public's interest in as quick and efficient resolution of the charges as possible. In fact, severance might indeed bring about this goal as it will allow for the swift disposition of the Government's case against the non-capital Defendants. Moreover, although a second

trial will somewhat inconvenience the Government's witnesses, this is not to say that a second trial will give the capital Defendant an impermissible advantage in that he will learn about the Government's case given the rigorous discovery disclosure requirements that the Government faces in its case against the capital Defendant. Finally, and most importantly, without the benefit of hindsight, severance ensures that the end result will be impartial and reliable.

Lastly, although the Government is correct in that the data submitted consists of raw statistics, we find compelling what other federal district courts have done when faced with the "ever-present risk of prejudice" of joint trials. *United States v. DeLeon,* 187 F.3d 60, 64 (1st Cir.1999). In the majority of federal death penalty cases some type of severance has been granted. *See* Declaration of Kevin McNally, Dockets ## 269, 270—Exhibit A. Specifically, in the twelve cases which have reached the trial stage where there was a single capital defendant and one or more non-capital defendants, severance has been granted eight times (67%). *Id.* Moreover, in the only other similar case in this district, severance was granted by Judge Hector Laffitte, severing the two capital defendants from the non-capital defendants. *United States v. Acosta Martinez,* Criminal No.99–044 (HL).

■ We clarify that we are not establishing a steadfast rule of general applicability, but that confronted with this particular case as presented, we find that it is in the best interest of justice that severance be granted.

### Conclusion

For the reasons stated herein, Defendants' motions to sever are **GRANTED.**

The non-capital Defendants shall be severed from Co-defendant Ayala.[3] A trial date for the non-capital Defendants shall be set forthwith.

**SO ORDERED.**

---

**3.** In the event that E.L.C. joins this case, he will be tried with Co-defendant Ayala.