# United States Court of Appeals
## For the First Circuit

No. 07-2084

UNITED STATES OF AMERICA,

Appellee,

v.

SEAN KING,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro,  U.S. District Judge]

Before

Boudin, Stahl and Lipez,

Circuit Judges.

David Abraham Silverman, by appointment of the court, for appellant.
    Terry L. Ollila, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief for appellee.

January 29, 2009

**BOUDIN**, <u>Circuit Judge</u>.  Sean King was convicted on federal charges directed to his involvement in a robbery of the Bellwether Credit Union in Manchester, New Hampshire, and he now appeals from his conviction and sentence.  Because the sufficiency of the evidence is not directly at issue, we abbreviate the description of the evidence.

The robbery in question occurred on October 19, 2005.  Bank employees testified that two men had entered the bank, threatened the tellers with guns, and taken $18,450.  One of the robbers was wearing a red jacket with white stripes; the other wore dark clothing and left a footprint on the counter.  They were in the bank for about seventy seconds, after which bank customers saw the two men run out of the bank and speed away in a blue Cadillac STS.

Later discoveries led police to suspect King and Steven Huard as the robbers.  Approximately nine hours after the robbery, an officer found a blue Cadillac STS that had been reported stolen by its owner two days before the robbery.  The car had been wiped down, but officers recovered a latex glove bearing Huard's fingerprints.  In addition, a source told police that King had been bragging about committing the robbery.

King's girlfriend admitted to police that she had seen King and Huard wipe down a blue Cadillac STS wearing latex gloves, that she was with King the night of the robbery, that she helped

-2-

him count a large amount of money, that King showed her an article about the robbery, that she had seen King and Huard with guns and that King had burned Huard's red and white striped jacket (which the police then recovered). The police also matched one of King's shoes to the footprint on the bank counter and found an article about the robbery among his belongings.

In November 2006, King was charged by superceding indictment with conspiracy to rob, and robbery of, a credit union, 18 U.S.C. §§ 371, 2113(a) (2006) (counts one and two); possession and brandishing of a firearm (King's weapon) in furtherance of a crime of violence and the same offense without brandishing (based on Huard's weapon), id. §§ 924(c)(1)(A)(i), (ii) (counts three and four); and interstate possession and transportation of a stolen motor vehicle, id. §§ 2312-13 (counts five and six). A jury convicted on all six counts and King was later sentenced to 360 months' imprisonment.

On this appeal, King first argues that count three should have been dismissed based on the government's alleged agreement to dismiss that count should King be convicted of both counts three and four. The government had added the second gun charge, attributing Huard's weapon to King on a Pinkerton theory, Pinkerton v. United States, 328 U.S. 640 (1946), assertedly because it had not been able to recover King's own gun (named in count three) and thought he might otherwise escape conviction on any gun charge.

-3-

Defense counsel had objected to the trial judge that count four was vindictive, having been added to the indictment because King had refused to help the government convict Huard. This motion was based on defense counsel's belief that the second gun conviction could subject King to an additional twenty-five year term under section 924(c)(1)(C)(i) as interpreted in Deal v. United States, 508 U.S. 129 (1993). This danger turned out to be imaginary,[1] but before defense counsel corrected his mistake the district judge had said:

> [W]e may be able to make your vindictive prosecution go away if we simply have an agreement here that if he's convicted on both Count Three and Count Four, that I will sentence him as if he is only convicted on the Huard charge. We will all agree to the dismissal of the King 924(c) if he's convicted on the Pinkerton.

The prosecutor had replied, "Yes, I have no problem."

The next day the defense counsel, after discovering he was incorrect under Pena-Lora, withdrew his motion. Then, during the trial, the district court ruled that counts three and four were multiplicitous, that is, charging the same crime in two different counts; the judge obtained the parties' agreement that "we will not for sentencing purposes treat . . . Three and Four as distinct

---

[1]In United States v. Pena-Lora, 225 F.3d 17 (1st Cir. 2000), cert. denied sub. nom Lorenzo-Perez v. United States, 531 U.S. 1114 (2001), the court ruled that two section 924(c) gun charges based on the same predicate offense constituted one unit of prosecution, id. at 32, and therefore King would not be subject to the additional, consecutive twenty-five year term under Deal.

counts. If [King is] convicted on either Three or Four or both Three and Four, he will be treated as having committed one crime."

Finally, at sentencing, the district judge adopted the pre-sentence report, which attributed only one gun to King. But (without objection), the court imposed sentences on all six counts, with concurrent sentences on counts three and four, as well as $100 special assessments for each count of conviction. Thus, King has two convictions--although the sentence is not longer on that account--under section 924(c)(1)(A) and has been assessed $100 more than he would for a single count of conviction. 18 U.S.C. § 3013.

Although the government was entitled to present both gun scenarios to the jury, probably both could best have been incorporated into one count. United States v. Verrecchia, 196 F.3d 294 (1st Cir. 1999) (possession of multiple weapons by a felon comprises a single offense); United States v. Lindsay, 985 F.2d 666, 676 (2d Cir.), cert. denied, 510 U.S. 832 (1993). In any event, under Verrecchia, Pena-Lora, and more recent precedent, United States v. Rodriguez, 525 F.3d 85 (1st Cir. 2008), King should not have had separate convictions and sentences on both counts.

But King's claim both below and before us is not based on this line of argument nor was the objection itself preserved at sentencing, so the standard of review is only for plain error. United States v. Olano, 507 U.S. 725 (1993). One might contend

-5-

that even if the double conviction were plain error and prejudicial, the extent of prejudice--a nominal second conviction with concurrent sentence and a $100 assessment--does not meet the "miscarriage of justice" requirement, id. at 736. Yet a pair of Supreme Court decisions reach the opposite result, Rutledge v. United States, 517 U.S. 292, 302 (1996); Ball v. United States, 470 U.S. 856 (1985), and many other circuits have so read those decisions.[2]

Pena-Lora itself found plain error in such a situation; but the sentences there were consecutive and the court merely ordered that they be made concurrent. But in Pena-Lora, both parties agreed that the consecutive sentence was a mistake, the government suggested a concurrent sentence and the choice of remedy seems not to have been an issue in this court. Neither Rutledge nor Ball appears to have been cited to the panel.

In any event, while the practical difference in remedies may not be great, Rutledge and Ball indicate that the Supreme

---

[2]See United States v. Miller, 527 F.3d 54, 73-74 (3d Cir. 2008); United States v. Ogba, 526 F.3d 214, 237-38 (5th Cir.), cert. denied, 129 S. Ct. 220 (2008); United States v. Parker, 508 F.3d 434, 439-41 (7th Cir. 2007); United States v. Zalapa, 509 F.3d 1060, 1064-65 (9th Cir. 2007); United States v. Sublett, 189 F. App'x 413, 416-17 (6th Cir. 2006) (unpublished); United States v. Bennafield, 287 F.3d 320, 324 (4th Cir.), cert. denied, 537 U.S. 961 (2002); United States v. Gore, 154 F.3d 34, 47-48 (2d Cir. 1998). But see United States v. Bailey, 206 F. App'x 650, 652-53 (8th Cir. 2006) (unpublished), cert. denied, 127 S. Ct. 2901 (2007); United States v. Gricco, 277 F.3d 339, 351 (3d Cir. 2002); United States v. Roberts, 262 F.3d 286, 292-94 (4th Cir. 2001), cert. denied, 535 U.S. 991 (2002).

Court's preferred outcome in this situation is vacation of the duplicative conviction. Following Rodriguez also aligns us with the dominant approach in the circuits and requires only a mechanical adjustment on remand. As for the prosecutor's supposed contingent agreement to dismiss, this was offered only in response to King's motion, which was itself then withdrawn, and is not the basis of our remand.

King next argues that the prosecutor made improper remarks in closing argument. Because King did not object, our review is for plain error. United States v. Figueroa-Encarnacion, 343 F.3d 23, 27 (1st Cir. 2003), cert. denied, 540 U.S. 1140 (2004). Even if improper, the prosecutor's remarks would only matter if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted) (citation omitted); United States v. Munoz-Franco, 487 F.3d 25, 67-69 (1st Cir.), cert. denied, 128 S. Ct. 678 (2007).

The prosecutor disparaged the defense, calling it "the buckshot defense," a strategy of "throw[ing] as much garbage against the wall and hop[ing], beyond all hope, that something sticks." She also described defense counsel as having tried "to push [a] young 17-year-old" government witness around and said, "Could you actually believe that Attorney Levin was trying to get

-7-

Hookset police officer Aaron Brown to testify about was the radio on, was the radio off?"

Whatever one thinks of the phrasing of these remarks, they do not come within miles of persuading us that they had any impact whatever on the verdict. They are not inflammatory, nor do they refer to inadmissible evidence or appeal to the jury to rely upon improper considerations. If defense counsel had objected at trial, the trial judge might well have told the prosecutor to tone down her language; but defense counsel did not and that is the end of the matter.

King also challenges the district court's decision to deny his motion for a mistrial based on a juror's consultation of outside material. After the jury returned its verdict, a deputy clerk found an envelope in the jury room containing a two-page document from the American Judicature Society procured by one of the jurors. The court had not given the jury the document to consider in its deliberations, so the court called the jurors back in the next day to engage in a voir dire.

The court first questioned the juror who had brought the document and the foreman. The former admitted to having found it after a search for jury deliberation guidelines, making fourteen copies and offering them to the foreman. The foreman returned them without giving them to other jurors. The foreman confirmed this account. The other jurors were then questioned; one said that he

had seen the document on the table, looked at it briefly, and put it back, focusing instead on the court's instructions.

The district court then denied King's motion for a mistrial, saying that it had reviewed the document and that

> it is in fact a very good statement of what we expect jurors to do. I would think about using it myself, as a matter of fact, as a supplement to the instructions that I give. . . . It is entirely inoffensive. It in fact gives good advice to jurors as to how to behave. It's entirely consistent with my instructions. That it was reviewed by anybody is not problematic and does not call into question the integrity of the jury process.

The court also said that the jurors had been told not to do outside research about the case but had not been specifically warned not to inquire into their responsibilities as jurors.

Our review of the district court's inquiry into possible jury taint and ultimate decision to deny a mistrial is for abuse of discretion. United States v. Tejeda, 481 F.3d 44, 52 (1st Cir.), cert. denied, 128 S. Ct. 612 (2007). King does not contest the thoroughness of the inquiry and has given no reason why the juror's action prejudiced the trial. Declaring a mistrial is a remedy of last resort, United States v. Lara-Ramirez, 519 F.3d 76, 82 (1st Cir. 2008); no sensible judge would have granted the motion here.

Finally, King challenges his sentence, which is long partly because of his criminal history. He does not claim that the district court miscalculated the guideline range, which was 360 months to life, but says that the judge should have an opportunity

to reconsider its sentence under <u>Kimbrough</u> v. <u>United States</u>, 128 S. Ct. 558 (2007), and <u>United States</u> v. <u>Boardman</u>, 528 F.3d 86 (1st Cir. 2008), both decided after the sentencing.

Broadly described, these cases allow the district court to deviate from the guidelines based on categorical policy disagreements, and King points to the career offender guidelines which increased his guideline range substantially. <u>See</u> U.S.S.G. § 4B1.1. King made no request at sentencing that the guideline should be disregarded on policy grounds but did argue that his criminal history overestimated his dangerousness.

The district court rejected the argument that King's future dangerousness was overstated. Instead, it noted that one of its primary concerns was protection of the public--King had over thirty prior convictions. The court said that the sentence would "insure that the defendant is well into his sixties by the time that he is eligible for release." The concern about future dangerousness is a common one in sentencing.

In <u>Boardman</u>, where a sentence was imposed before <u>Kimbrough</u> but appealed afterwards, we ordered a remand where we found "some explicit indication that [the court] might well alter its sentence in light of [<u>Kimbrough</u>]." 528 F.3d at 87. Nothing in this case suggests that the district court harbored any doubt about the soundness of the career offender guidelines as applied to

King.  If anything, the court's statement strongly indicates otherwise.

The convictions and sentences are <u>affirmed</u>, except that the conviction and sentence as to count four, including the associated $100 special assessment, are <u>vacated</u>.  We <u>remand</u> to the district court for entry of judgment consistent with this opinion.

<u>It is so ordered</u>.