**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 07-1617

UNITED STATES OF AMERICA

Appellee,

v.

CARLOS L. AYALA-LOPEZ,
a/k/a Macro,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge
Souter, Associate Justice,[*]
and Lipez, Circuit Judge.

Rachel Brill was on brief for appellant.
Luke V. Cass, Assistant United States Attorney, with whom
Rosa Emilia Rodriguez-Velez, United States Attorney, and Nelson
Pérez-Sosa, Assistant United States Attorney, were on brief, for
appellee.

August 6, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>.**  Carlos Ayala-Lopez ("Ayala") was convicted of murdering a police officer with the United States Department of Veterans Affairs, as well as committing several other crimes while acting in a conspiracy to distribute drugs.  He claims a number of reversible errors: in the district court's failure to sever his trial from that of a co-defendant; in trial by a death-qualified jury; in the jury's acceptance of the evidence as sufficient to prove first degree murder; in the court's refusal to instruct on manslaughter; and in its failure to grant relief from two mistakes in the indictment, one being multiple counts of using various guns in the course of the conspiracy (exposing him to double jeopardy), the other combining more than one gun offense in a single count.  As the Government concedes, Ayala cannot be punished separately for each gun that he possessed in the course of a single predicate conspiracy, and we accordingly vacate two of his gun possession convictions.  On all other matters, we affirm.

Ayala came to the notice of federal agents responding to reports of violence and drug activity at a public housing project in Puerto Rico.  FBI Special Agent William Ortiz observed Ayala holding a firearm in a drug distribution area; Ayala was seen near individuals engaging in drug transactions; and he was videotaped handing a pistol to Luis Llorens, the leader of a gang that sold the drugs.  Local police officers repeatedly saw him at the drug sales point, often holding a gun, and the officers seized firearms

from him several times. A number of cooperating witnesses at Ayala's trial testified to their recollections of his involvement with the drug gang and his use of guns in robberies and disputes with a rival criminal organization.

On April 24, 2002, Llorens ordered the gang members to steal some firearms to replenish their diminished stock of weapons, and according to a confidential informant, Ayala, Llorens, Angel Obregón-Fontánez, and Eusebio Llanos-Crespo set out to do their part by driving to a Veterans Affairs hospital to grab a handgun from a police officer. Llorens stayed in the car and Obregón-Fontánez hid in a nearby phone booth while Ayala and Llanos-Crespo approached the officer. When he resisted, Ayala shot him twice in the ensuing struggle. Ayala was later recorded describing how it was that, after the officer "made a move" and scratched him, he "took him down" by shooting him. He said that, at that point, Llanos-Crespo began to fire at the officer as well. A bullet recovered from the victim's body matched a .38 caliber pistol linked to Ayala.

I

The initial indictment accused Ayala and eight others of drug conspiracy and unlawful possession of firearms in the course of it, on top of charging Ayala with the murder. After the murder count was certified as capital, both Ayala and several non-capital co-defendants moved to sever their trials, and Judge Salvador E.

Casellas, then assigned to the case, ordered the severance. United States v. Ayala-Lopez, 319 F. Supp. 2d 236 (D.P.R. 2004). The ruling, however, had no immediate effect on the prosecution of defendant Llanos-Crespo, who was then in juvenile proceedings, but the judge wrote in a footnote that "[i]n the event that [Llanos-Crespo] joins this case, he will be tried with Co-defendant Ayala." After Judge Casellas had taken senior status, and the case had been transferred to Judge Jay A. García-Gregory, Llanos-Crespo was certified to be tried for the murder as an adult, and it was Judge García who issued a summary order denying Ayala's motion to sever his trial from Llanos-Crespo's.

Ayala argues that the latter ruling was an error of law, as being inconsistent with the earlier one in the same case, see Ellis v. United States, 313 F.3d 636, 646-48 (1st Cir. 2002) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."), and he says that denying the motion was an abuse of discretion in any event. As to the first point, law of the case doctrine would help Ayala in his second motion to sever only if the first ruling had ordered severance of his trial from Llanos-Crespo's or had established a category of cases for mandatory severance that unquestionably covered Llanos-Crespo's. But Judge Casellas's order did neither of those things, covering nothing more than Ayala's trial and those of the defendants then before him who

-4-

were not charged with the murder.  If anything, the doctrine cuts against Ayala, since Judge Casellas expressly contemplated that Ayala and Llanos-Crespo would be tried together if Llanos-Crespo was tried as an adult.  See Ayala-Lopez, 319 F. Supp. 2d at 240 n.3.

Nor did Judge García abuse his discretion in denying Ayala's second motion to sever.  As a formal matter, Ayala suggests it was an abuse to rule without giving reasons for denying the motion, and he points to cases holding that the Board of Immigration Appeals abused its discretion when it failed to give any reasons for denying motions to reopen proceedings.  See, e.g., Zhao v. U.S. Dep't. of Justice, 265 F.3d 83, 93 (2d Cir. 2001).  But these cases arose in administrative adjudications on a subject of administrative speciality, and Ayala cites no authority requiring a district court to provide written findings when denying a severance motion based on law routinely administered by the trial courts in the first instance.  Even a summary denial of a motion to sever is to be "treated with a considerable amount of deference," and overturned only on a showing of "manifest abuse of discretion." See United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008).  Accordingly, although we do not have the district court's reasoning before us, we can review the merits of the decision to deny, and we find nothing unreasonable about it.

There is a strong preference in the federal system for holding joint trials of defendants charged with related crimes, Zafiro v. United States, 506 U.S. 534, 537 (1993), "the general rule [being] that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources," DeCologero, 530 F.3d at 52. Separate trials are not warranted unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.

Ayala says that he was prejudiced in his joint trial with Llanos-Crespo because he alone was designated as a capital defendant, suggesting to the jury that he was more blameworthy than Llanos-Crespo, whom the jury ultimately acquitted. And he complains of a further unfair handicap in subjecting him to Llanos-Crespo's defense strategy. Llanos-Crespo argued that he himself was not involved in the shooting, but did not directly argue that Ayala was. Nonetheless, Ayala says that the implication of Llanos-Crespo's argument was that Ayala and Obregón-Fontánez were the ones responsible.

Neither argument calls for relief. His claim that his status as the only capital defendant created a disadvantageous contrast with Llanos-Crespo is purely speculative. As to conflicting defenses, Ayala has hardly "demonstrate[d] that the

defenses are so *irreconcilable* as to involve fundamental disagreement over *core and basic facts*." United States v. Peña-Lora, 225 F.3d 17, 34 (1st Cir. 2000) (quoting United States v. Paradis, 802 F.2d 553, 561 (1st Cir. 1986) (internal quotation mark omitted)). The sort of conflict that stands in the way of joint trials is a function of conflicting evidence, of which there was none here; indeed, Llanos-Crespo presented no evidence at all. See United States v. Rose, 104 F.3d 1408, 1416 (1st Cir. 1997) ("[T]he level of antagonism in defenses is measured by the evidence actually introduced at trial; argument by counsel is not evidence."). Nor is it even likely that the two defendants' overall strategies conflicted in any material way; Ayala does not contend that he had no part in the shooting (given the powerful inculpatory evidence), and Llanos-Crespo's argumentative suggestion that Ayala was involved was consequently unlikely to be harmful. In any case, it was nothing more than finger pointing, which is not enough to taint a trial. See id. Finally, the district court instructed the jury that the evidence presented should be considered "separately and individually as to each defendant," and made it clear that the verdict was not an either-or tradeoff. See United States v. Rodriguez-Marrero, 390 F.3d 1, 27 (1st Cir. 2004); United States v. Capelton, 350 F.3d 231, 239 (1st Cir. 2003). Denying the motion to sever was not an abuse of discretion.

Ayala was convicted of a capital crime by a death-qualified jury, that is, one comprising jurors who had been found to be able to fulfill their oaths to follow the law by considering imposition of the death penalty if they found the defendant guilty. See Wainright v. Witt, 469 U.S. 412, 424 (1985). Although the jury opted against death here, Ayala presses his objection to trial by a jury thus qualified, arguing that it was more prone to convict than a jury would have been if selected without concern for the possibility of a death sentence.

It is hard to see the sense of his point, since he was being tried for a capital offense subject to the Government's request for death, all of which shows that his real complaint is about subjecting him to the possibility of imposing the capital penalty itself, to which he did in fact object. Prior to trial, Ayala filed several motions attacking the (potential) application of the penalty, all of which were summarily denied by the trial judge. He reiterates his objections on appeal, now claiming that the trial court committed reversible error by trying him before a death-qualified jury when a sentence of execution should have been precluded as a matter of law.

Ayala cites his prior motions in complaining that he was charged in two separate counts for a single murder, and in alleging (without evidence) that the Second Superseding Indictment was

obtained from a grand jury unaware that Ayala might be subject to the death penalty; but these motions were aimed at earlier versions of the indictment than the one on which he was actually tried. As for his broader attack on the penalty statute, this court has previously rejected claims that the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598, is unconstitutionally arbitrary, United States v. Sampson, 486 F.3d 13, 23-25 (1st Cir. 2007), as well as claims that the FDPA cannot apply in Puerto Rico, United States v. Acosta-Martinez, 252 F.3d 13 (1st Cir. 2001). In deciding Ayala's first appeal, we have already upheld the validity of the death penalty notices he received, see United States v. Ayala-Lopez, 457 F.3d 107 (1st Cir. 2006), and we have rejected constitutional challenges to the FDPA based upon Ring v. Arizona, 536 U.S. 584 (2002) (holding jury must determine the presence or absence of aggravating factors in death penalty sentencing), see Sampson, 486 F.3d at 20-23. In sum, Ayala was charged with a capital crime and has failed to adduce any reason that a death sentence would not have been constitutional in his case. His jury was properly death-qualified, and we accordingly have no reason to consider any consequence of a death-qualified jury in a case in which the death penalty for some reason could not be constitutionally imposed. See Washington v. State, 737 So. 2d 1208 (Fla. Dist. Ct. App. 1999).

III

Ayala was convicted of first-degree murder under 18 U.S.C. § 1111, the charge being that he murdered a federal officer "with premeditation" and "malice aforethought." In arguing that the evidence was insufficient to prove premeditation beyond a reasonable doubt, he adverts to the trial testimony showing that he and the others went to the Veterans Affairs hospital to steal a gun from the officer, not to kill him, and the situation became chaotic rapidly: the officer grappled with Ayala and scratched his arm immediately before Ayala shot him. There was, Ayala says, no direct evidence of deliberation before the shots were fired, and the first degree murder charges should have been withdrawn from the jury under Federal Rule of Criminal Procedure 29(a).

But the murder conviction is not vulnerable on our de novo review, given the reasonable evidentiary inferences that may be drawn in support of the verdict. See United States v. Rosado-Pérez, 605 F.3d 48, 52 (1st Cir. 2010). "Premeditation contemplates a temporal dimension, which need only be an appreciable amount of time." United States v. Catalán-Roman, 585 F.3d 453, 474 (1st Cir. 2009) (internal quotation marks omitted). This time "varies with each case" and the key element is the "fact of deliberation, of second thought." United States v. Frappier, 807 F.2d 257, 261 (1st Cir. 1986). As a general rule, second thought is sufficiently shown when a defendant inflicts deadly

force on a victim already wounded, Catalán-Roman, 585 F.3d at 478, as was the case here.  Ayala shot the officer and then shot him again, first in the head, and then through the heart, and his own description of the sequence confirms that he thought before making a conscious decision to shoot.  According to the testimony of one of Ayala's confreres, he said that he that he "took [the officer] down" because he "got mad" after being scratched.

Ayala does no better on his complementary argument that he was entitled to an instruction on manslaughter, see 18 U.S.C. § 1112, as a lesser offense included in the crime of murder.  This would require him to show that his factual objection going to the element of premeditation could rationally have been resolved in his favor by a conviction for manslaughter.  See United States v. Ferreira, 625 F.2d 1030, 1031 (1st Cir. 1980).

As it was, the district court did instruct the jury on second-degree murder as a lesser included offense, that is, murder without premeditation but with malice aforethought, but Ayala says that this did not go far enough: "the struggle, the scratches, the suddenness, the chaos" and his "consumption of narcotics and alcohol" all combined to create a legitimate factual dispute over whether Ayala killed the officer without malice "upon a sudden quarrel or heat of passion," thereby committing voluntary manslaughter.

-11-

This issue, too, gets de novo review, <u>United States</u> v. <u>Boidi</u>, 568 F.3d 24, 27 (1st Cir. 2009), which reveals no error in the district court's refusal to give the requested instruction. The evidence is unequivocal that he shot the officer twice in the course of robbing him, while the officer's own weapon remained in its holster, and no jury could rationally find in his favor on a claim that he acted on provocation sufficient to incite a reasonable person to kill another in a fit of passion. <u>See, e.g.</u>, <u>United States</u> v. <u>Collins</u>, 690 F.2d 431, 437 (5th Cir. 1982). The evidence shows only that while carrying out a planned armed robbery of a firearm, Ayala intentionally shot his victim after being scratched on his hand or arm.

IV

Lastly, Ayala claims there were errors in the indictment, starting with his contention that his convictions for firearms possession offenses are duplicative, in violation of the Double Jeopardy Clause. Count two of the indictment used at trial charged possession of a .45 caliber Colt pistol in furtherance of a drug trafficking crime, violating 18 U.S.C. § 924(c)(1)(A)(ii); count three charged similar possession of a .357 caliber Ruger revolver; count four named a .38 caliber Smith & Wesson revolver in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and count six charged possession, carrying, brandishing, using, and discharging firearms during and in relation to a crime of violence, when he used a firearm to kill

a person with malice aforethought, contrary to 18 U.S.C. § 924(c) and (j).  He argues that the firearm convictions under counts two, three, and four, on which he received multiple, consecutive prison sentences, subjected him to double jeopardy because they relate to a single drug conspiracy.  The prosecution agrees with him.

Since "the imposition of multiple consecutive sentences under subsection 924(c) for using multiple weapons during a single predicate crime . . . impinge[s] upon fundamental double jeopardy principles," United States v. Rodriguez, 525 F.3d 85, 111 (1st Cir. 2008) (internal quotation marks omitted), the Government concedes that only one of the firearm convictions may stand, and proposes that we vacate the convictions, sentences, and special assessments as to counts two and four.[1]  We do so, and because Ayala was sentenced to life imprisonment on counts one, five, and six, this remedy "requires only a mechanical adjustment on remand."  United States v. King, 554 F.3d 177, 181 (1st Cir. 2009).

Ayala contends that his conviction under count three should be vacated as well, because the Government that charged him with duplicative counts should not now be favored with the choice of which conviction of the three will remain standing.  But such a penalty for charging error has no precedent or support; courts can correct these sorts of mistakes on a defendant's motion, just as

---

[1] Ayala was sentenced to seven years on count two and twenty-five years on count four, as well as a $600 special assessment.

the Government concedes we do now, and there is no need for <u>in terrorem</u> deterrence beyond the typical remedy we order here.  <u>See id.</u>; <u>Rodriquez</u>, 525 F.3d at 112.  This disposition also answers Ayala's claim that count four was duplicative of count six.

As his final assignment of error, Ayala claims that count six erroneously described the offense conduct necessary for conviction under 18 U.S.C. § 924(c)(1)(A), putting him at risk of conviction for innocent acts, or, in the alternative, he says that count six described two separate violations of § 924(c)(1)(A), a duplication requiring vacatur.  We think he is mistaken.

Section 924(c)(1)(A) applies to "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  Thus the statute arguably describes two distinct, culpable acts, <u>see</u> <u>United States</u> v. <u>Arreola</u>, 467 F.3d 1153 (9th Cir. 2006): (1) using or carrying during and in relation to, and (2) possessing in furtherance.  Ayala argues that the indictment here confused the two types of conduct by charging that he "knowingly *possessed*, carried, brandished, used and discharged firearms . . . *during and in relation to* a crime of violence" (emphasis added).  Thus, he contends, it allowed a conviction for possession under the lower standard of "during and in relation to," rather than "in furtherance of," a crime of violence.  If the

indictment were simply for violating (c), he would have a colorable argument.[2]

Count six, however, charged Ayala with violating 18 U.S.C. § 924(j), which provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall . . . if the killing is a murder . . . be punished by death or by imprisonment for any term of years or for life." Hence, to find a violation of § 924(j) by causing death through the use of a firearm as well a violation of (c), a jury must find death by "use" and "during and in relation to" as (c) uses those terms. As a consequence, the charge of possession "during and in relation to" was rendered surplusage, and because the jury was instructed to convict on count six only if they found a (j) violation beyond a reasonable doubt, the indictment's singular reference to possession did him no harm.

This is confirmed by the verdict form showing that the jury unanimously convicted Ayala of violating (j) by "causing the death of [the victim] with a firearm, unlawfully," the fair reading of which presupposes finding beyond a reasonable doubt that the defendant used a firearm during and in relation to a crime of

---

[2] We need not decide whether the relation and furtherance elements differ in any material way, and we express no opinion on the matter. Nor is it necessary here to determine whether § 924(c)(1)(A) creates two separate offenses or merely specifies two separate means of committing a single offense. Compare United States v. Combs, 369 F.3d 925, 933 (6th Cir. 2004), with Arreola, 467 F.3d at 1157-58.

violence under § 924(c)(1)(A).  Thus, any error by including the term "possession" in the indictment was harmless owing to its irrelevance, which apparently did not in any way affect the jury's conviction of Ayala under § 924(j).[3]  See Arreola, 467 F.3d at 1162 (duplicative error in jury verdict form was harmless because it likely did not affect the jury's decision to convict).

We remand to the district court to vacate the convictions, sentences, and special assessments on counts two and four.  We affirm in all other respects.

**So ordered.**

---

[3] Ayala argues that, even if the indictment properly charged two separate offenses of possession and use, it was "duplicitous" for charging two offenses in one count, thereby allowing the jury to convict even if the jurors did not reach a unanimous verdict on any one offense.  We reject this alternative for the same reason we cannot accept Ayala's primary argument: it is clear that the jury unanimously found Ayala guilty of using a firearm unlawfully to kill another person, in violation of 18 U.S.C. § 924(j) as well as (c).