# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JOSE ARREOLA,
            *Defendant-Appellant.*

No. 04-10504

D.C. No.
CR-01-40120-DLJ

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
D. Lowell Jensen, District Judge, Presiding

Argued and Submitted
February 16, 2006—San Francisco, California

Filed April 26, 2006
Amended November 8, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thomas

18345

**COUNSEL**

Marc J. Zilversmit, San Francisco, California, for appellant Arreola.

Deborah R. Douglas, Assistant United States Attorney, San Francisco, California, for appellee United States.

**ORDER**

The panel has decided to amend the opinion filed April 26, 2006. A substituted amended opinion is filed concurrently with this order.

With the filing of the amended opinion, the panel has voted to deny the petition for rehearing. Judge Thomas has voted to deny the petition for rehearing en banc, and Judge Wallace and Judge Hawkins so recommend.

The full court has been advised of the petition for rehearing en banc, and no active judge has requested a vote whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing is DENIED, and the petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc will be allowed.

## OPINION

THOMAS, Circuit Judge:

In this appeal, we consider whether in using the phrases "possesses" and "uses or carries," 18 U.S.C. § 924(c)(1)(A) defines two offenses or two means of committing a single offense. We conclude that the statute defines one offense, and affirm the judgment of the district court.

I

Jose Arreola appeals his conviction for the use of a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The circumstances that led to his conviction began in April 2001, when Arreola met Roberto Martinez, an undercover police officer, in a Taco Bell parking lot in Oakland. Arreola invited Martinez into his gold Ford Expedition. When Martinez got into the car, Arreola was seated in the second of three rows of seats. Two of Arreola's associates were seated in the front seats, and a confidential informant was seated with Arreola. Arreola offered to sell Martinez seventy ounces of heroin. Martinez asked Arreola to

wait while he got the money to pay for the heroin. Martinez exited the Expedition, supposedly to obtain the necessary cash, and gave an arrest signal to officers waiting nearby. Arreola and his two associates were arrested.

After the arrests, officers searched the Expedition and found a loaded .45 caliber "Combat Elite" semiautomatic handgun in the glove compartment. The handgun was positioned such that "someone sitting in the front passenger's seat would . . . have easy access to" the gun. However, it would have been more difficult to access the gun from the middle row of seats when there were people sitting in the front seats.

When officers searched Arreola upon his arrest, they found an extra magazine clip in his pocket. In a statement to the officers, Arreola explained, "I bought the Colt Commander .45 semi-automatic gun from the street for two-hundred dollars. I usually carry the gun for protection since I have a lot of encounters with gang members."

On July 19, 2001, in Count Three of a six-count Indictment, the government charged that:

> On or about April 27, 2001, in the Northern District
> of California, the defendant
> JOSE ARREOLA,
> did knowingly and intentionally possess a firearm
> during and in relation to the drug trafficking crimes
> set forth in Counts One and Two of this Indictment
> . . . .

The government filed a Superceding Indictment on December 6, 2001. The Superceding Indictment amended Count Three to read:

> On or about April 27, 2001, in the Northern District
> of California, the defendant

JOSE ARREOLA
did knowingly and intentionally use and carry the
firearm discussed below during and in relation to,
and possessed the same firearm in furtherance of the
drug trafficking crimes set forth in Counts One and
Two of this Indictment . . . .

When the district court asked the prosecutor to state the dif-
ference between the two indictments, the prosecutor
responded that "the government has simply added the — lan-
guage or the theory of carrying the firearm in addition to pos-
sessing the firearm."

In its closing argument, the government argued repeatedly
that the jury could convict Arreola if it found "beyond a rea-
sonable doubt that the defendant committed one or both of the
following: number one, that he carried the .45 caliber semiau-
tomatic handgun during and in relation to a drug-trafficking
crime; or two, defendant possessed the same firearm in fur-
therance of a drug-trafficking crime." Similarly, defense
counsel argued that the jury could not convict unless it found
that "the defendant knowingly carried or possessed a .45 cali-
ber semiautomatic handgun" and that "the defendant carried
the firearm during and in relation to or possessed the firearm
in furtherance of the drug-trafficking crime as charged in
Count 1 of the indictment."

After the parties finished their respective closing argu-
ments, the judge instructed the jury. Prior to trial, the govern-
ment had proposed to instruct the jury that it could convict on
the § 924(c) count only if it found that Arreola knowingly
committed the underlying drug crime and that he "knowingly
carried a .45 caliber semi-automatic handgun, Combat Elite
Brand, during and relation to, or possessed the same firearm
in furtherance of, the drug-trafficking crime set forth in Count
Two of the Superceding Indictment." The government's
instruction was based on the fact that "[t]he government is
proceeding on two different theories . . . . One is that

[Arreola] carried the handgun during and in relation to a drug trafficking crime. That's one theory. And the other one is that he knowingly possessed the same firearm in furtherance of a drug-trafficking crime." After some discussion about the possible overlap between "use and carry" and "possess," the court and the parties agreed not to treat them as "though they're two separate counts under 924(c)."

Ultimately, the judge instructed the jury that it could convict Arreola if it found that he committed the underlying drug offense, he "knowingly carried or possessed a .45 caliber semi-automatic handgun," and he "carried the firearm during and in relation to, or possessed the firearm in furtherance of the drug-trafficking crime as charged in Count One of the Indictment." In its closing instructions, the court gave the jury a general unanimity instruction: "The law requires that any verdict you return must be unanimous." The court's instructions—a copy of which was in the jury room—differed slightly from the verdict form, which stated, "We, the jury, find the defendant [guilty/not guilty] of possessing or carrying a firearm in relation to, or in furtherance of, a drug trafficking crime as charged in Count Two of the Indictment."

The jury convicted Arreola, and he was sentenced to 190 months in prison. This timely appeal followed.

II

**[1]** The central question in this appeal is whether 18 U.S.C. § 924(c)(1)(A) defines one offense or two. Section 924(c) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to certain minimum sentences. 18 U.S.C. § 924(c)(1)(A).

**[2]** In analyzing this question, we are assisted by the Supreme Court's guidance in *Bell v. United States*, 349 U.S.

81 (1955), which "laid down a presumption against constru-ing statutes so as to lead to multiple punishment." *United States v. UCO Oil Co.*, 546 F.2d 833, 837 (9th Cir. 1976). In *Bell*, the Court explained that

> [w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity . . . . It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

349 U.S. at 83. The fact that "a statute encompasses various modes of violation requiring different elements of proof . . . does not compel" the conclusion that the statute creates sepa-rate offenses. *UCO Oil*, 546 F.2d at 838.

**[3]** In determining whether the statute at issue creates sepa-rate offenses, or simply describes alternative means to commit the same crime, we employ the analytical framework estab-lished in *UCO Oil*. Under *UCO Oil*, we consider "several rel-evant factors," including: (1) "language of the statute itself," (2) "the legislative history and statutory context," (3) the type of conduct proscribed, and (4) the "appropriateness of multi-ple punishment for the conduct charged in the indictment." *Id.* at 836-838. Applying those factors to this case, it is clear that § 924(c) creates only one offense.

## A

**[4]** Under *UCO Oil*, we first examine the language of the statute itself. The critical language of § 924(c) applies to any person who "uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The statute does not simply list the prohibited activities—using, carrying, or possessing a firearm. Rather, it separates the "uses or carries" provision from the "possesses" provision, placing each in its own clause, separated by a dis-

junctive, "or." As a matter of grammatical construction, the use of the disjunctive indicates that Congress was addressing two separate acts. *United States v. Combs*, 369 F.3d 925, 931 (6th Cir. 2004) ("The two prongs of the statute are separated by the disjunctive 'or,' which, according to the precepts of statutory construction, suggests the separate prongs must have different meanings."); *see also United States v. Pleasant*, 125 F. Supp. 2d 173 (E.D. Va. 2000), *aff'd* 48 Fed. Appx. 909 (4th Cir. 2002) ("The use of a second relative pronoun, the presence of a second dependent clause and the choice of different modifiers for the prohibited conduct confirm that the second prohibited act is quite distinct from the first.").While it is clear that the statute proscribes two distinct *acts*, it is not clear from the statutory language that each *act* is a separate *offense*. Congress could have chosen in enacting the statute to create separate sub-parts, which would have presented a stronger argument that it creates separate offenses, but it did not. Rather, Congress placed both the "uses or carries" provision and the "possesses" provision in the same sentence.

Moreover, the punishments associated with a violation of § 924(c) do not vary according to whether the defendant violated § 924(c) by "using or carrying" or by "possessing." Rather, the punishments vary according to whether the defendant "brandished" or "discharged" a firearm, where brandishing and discharging are set out, as sentencing factors, in *separate* subsections of § 924(c). 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii).

**[5]** Therefore, while it is clear, as the courts held in *Pleasant* and *Combs*, that § 924(c) names two distinct acts, it does not create two separate offenses. Rather, it identifies two ways in which a defendant could violate § 924(c). *See United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995) ("The statute lists all of the acts of violation in one sentence, and imposes a single penalty for all of them, a construction which indicates that Congress did not mean to create more than one offense." (internal quotations omitted)).

B

**[6]** Analysis of the legislative history does not conclusively support either interpretation, but tends to suggest that Congress intended to create a single offense. In 1998, Congress amended § 924(c) in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which held that the "uses or carries" provision of § 924(c) did not encompass mere possession. 516 U.S. at 143 (requiring the government "to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense"). *See also* 18 U.S.C. § 924 (1997) (mentioning "uses or carries" but not possession).

In the first draft of Senate Bill 191, the Senate proposed to add the term "possesses" to the existing version of § 924 so that it read, "any person who, during and in relation to any . . . drug trafficking crime . . . , uses, carries, or possesses a firearm . . . ." S. 191 Version One, 105th Cong. (1997). In its bill, H.R. 424 Version 1, 105th Cong. (1997), the House proposed to replace the phrase "uses or carries" with "possesses" because "[t]he word 'possession' has a broader meaning than either 'uses' or 'carries,' thus reversing the restrictive effect of the *Bailey* decision." H.R. Rep. No. 105-344 at *6 (1997).

In a second draft, the House bill named three distinct firearms offenses, each in different subsections. H.R. 424 Version 2, 105th Cong. (1997).[1] The bill included subsections covering one who "possesses a firearm in furtherance of the crime,"

---

[1] The House bill, in pertinent part, provided:

(1)  A person who, during and in relation to a crime of . . . drug trafficking . . .

   (A)  possesses a firearm in furtherance of the crime . . .

   (B)  brandishes a firearm . . .

   (C)  discharges a firearm . . .

H.R. 424 Version 2, 105th Congress (1997).

"brandishes a firearm," and "discharges a firearm." *Id.* The Report of the House Committee on the Judiciary explained that it modified "possesses" with "in furtherance of the crime" even though

> the distinction between "in furtherance of" and "during and in relation to" is a subtle one, and may initially prove troublesome for prosecutors. Nevertheless, the Committee believes that "in furtherance of" is a slightly higher standard, and encompasses the "during and relation to" language.
>
> *    *    *
>
> The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence.

H.R. REP. NO. 105-344 at *11-12. *See also* 144 CONG. REC. S12671 (Daily Ed. Oct. 16, 1998, statement of Sen. DeWine) ("I believe that the 'in furtherance' language is a slightly higher standard that encompasses 'during and in relation to' language, by requiring an indication of helping forward, promote, or advance a crime.").

Both houses of Congress initially applied the "during and in relation to" standard to possession of a firearm. In the end, however, the amendment to § 924(c) retained the "uses or carries" provision separately from the "possesses" provision, and attached the more stringent "in furtherance of" requirement to possession. Arreola argues that the final structure of § 924(c) suggests that Congress deliberately intended to set forth the separate offense of possession, one that was not included in the original statute according to the Supreme Court's definition in *Bailey*.

**[7]** While the legislative history suggests that Congress intended to differentiate a defendant who "possesses" a firearm in "furtherance of" a crime from one who "uses or carries" a firearm "during and relation to" a crime, it is far from clear that Congress intended to create separate offenses. On the contrary, it appears that Congress structured § 924(c) as it did to assuage the fear of some members of Congress and "assure that someone who possesses a gun that has nothing to do with the crime does not fall under 924(c)." 144 CONG. REC. S12670 (statement of Sen. DeWine). *See also* 144 CONG. REC. H532 (Daily Ed. Feb. 24, 1998, statement of Rep. Waters) ("If a young man 19 or 20 years old maybe goes out to hunt and they have got a hunting rifle and they happen to have 5 ounces of crack cocaine inside their jacket pocket, they have a gun, . . . , they are in possession of drugs, first-time offense on the possession of the cocaine, 5 years minimum in Federal prison added to this with a gun, the hunting gun, now 15 years. Is that what the gentleman understands this bill to be?"); *id.* at H534 (statement of Rep. McCollum) ("If indeed the person possesses a gun, the simple possession of it during the course of while that is going on, if it is not in furtherance of that crime, it is not going to trigger the additional mandatory minimum. And it is not a gray area at all."). Moreover, the fact that Congress chose not to adopt the House bill—which explicitly proscribed separate offenses—suggests that Congress did not intend to separate § 924(c) into multiple offenses. Therefore, the legislative history does not support the conclusion that Congress intended to create two separate offenses in § 924(c).

## C

The third *UCO Oil* factor is whether the statute proscribes "distinctly different kinds of conduct," or whether the proscribed conduct is "regarded as [falling] within the conventional understanding" of one crime. 546 F.2d at 837. Where the proscribed acts "merge into each other, blurring any conceptual distinctions," it is less likely that the statute creates

separate offenses. *Id.* (holding that "the making of false statements and the concealment of a material fact by trick, scheme and device" are not separate offenses).

**[8]** In this case, the statute mentions two types of conduct, which require different proof:

> What the statute proscribes as conduct in the first clause is the use or carrying of a gun during (a temporal connection) and in relation to (a substantive connection) a predicate crime. What the statute proscribes in the second clause is possessing a gun in furtherance of (with a particular purpose of advancing) the specified crime.

*Pleasant*, 125 F. Supp. 2d at 182-83.

Turning to the first clause of § 924(c), to prove that a defendant used a firearm, the government must "show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, 516 U.S at 143. To prove that a defendant carried a firearm, the government must show that the defendant carried a firearm on his person or "knowingly possesse[d] and convey[ed] firearms in a vehicle." *United States v. Foster*, 165 F.3d 689-692 (9th Cir. 1999) (citing *Muscarello v. United States*, 524 U.S. 125 (1998)). The use or carrying of a firearm relates to the underlying drug offense where the firearm "facilitated or had a role in the crime." *United States v. Streit*, 962 F.2d 894, 899 (9th Cir. 1992).

Turning to the second clause, to prove that a defendant possessed a gun in furtherance of a drug offense, the government must show "that the defendant possessed the weapon to promote or facilitate the underlying crime . . . . In other words, this element of § 924(c) turns on the intent of the defendant." *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004).

**[9]** The two types of conduct that § 924(c) proscribes are difficult to distinguish conceptually. First, under *Foster*, a defendant may satisfy the "carries" prong of the first clause if he "possesses" a firearm in his car, which undoubtedly overlaps with the "possesses" prong of the second clause. Second, "during and in relation to" and "in furtherance of" require similar proof. As the House Report acknowledged, "the distinction between 'in furtherance of' and 'during and in relation to' is a subtle one, and may initially prove troublesome for prosecutors." 105 H.R. REP. 105-344 at 12. The similarity between the evidence necessary to prove a violation of the first clause of § 924(c) and the evidence necessary to prove a violation of the second suggests that § 924(c) proscribes only one offense.

## D

**[10]** The final *UCO Oil* factor is the "appropriateness of multiple punishment for the conduct charged in the indictment." 546 F.2d at 837-838. In considering this factor, we bear in mind the Supreme Court's admonition in *Bell* to avoid construing statutes in a way that would lead to multiple punishment. We also note that the fact that "a statute encompasses various modes of violation requiring different elements of proof . . . does not compel" the conclusion that the statute creates separate offenses. *UCO Oil*, 546 F.2d at 838.

**[11]** Applying this rule to § 924(c), it would seem absurd to permit multiple punishment of a defendant who violates both the "uses or carries" clause and the "possesses" clause. Consider the following scenario: a drug dealer goes to meet a buyer, much like Arreola did in this case. He possesses a gun and intends to use it if a buyer does not pay him. For that conduct, he is guilty of violating the "possesses" clause of § 924(c). Once he gives the buyer the requested drugs, and the buyer refuses to pay, the drug dealer tells the buyer that he has a gun and will use it if the buyer does not give him the money. For threatening the buyer with the gun, the drug

dealer is guilty of violating the "uses or carries" clause of § 924(c). Were the two clauses of § 924(c) held to be separate offenses, the drug dealer could be punished twice for one contiguous act. Congress, when it revised § 924(c) after the Supreme Court's decision in *Bailey*, is unlikely to have intended such a result. The more logical conclusion is that Congress intended to widen the means of proving a single offense.

## E

**[12]** In sum, applying the *UCO Oil* factors, we conclude that § 924(c)(1)(A) defines only one offense. We are mindful that the Sixth Circuit has reached a contrary conclusion, finding the presence of a different standard of proof persuasive. *See Combs*, 269 F.3d at 932-33. However, as we have noted, the standards of proof are not so dissimilar as to indicate that Congress intended to create two separate offenses, as opposed to identifying two ways in which a person could commit a single offense. Our construction of the statute, we respectfully suggest, appropriately applies the presumption against multiple punishment for a single act, is true to the plain meaning of the statute and its legislative history, and is a more logical interpretation of the distinct acts as falling within the conventional understanding of one crime.

## III

Applying our statutory interpretation to the case at hand, we must reject the arguments Arreola urges on appeal. Where a defendant fails to object to an indictment as duplicitous before trial and fails to object to the court's jury instructions at trial, we review for plain error under Federal Rule of Criminal Procedure 52(b). *United States v. Technic Servs.*, 314 F.3d 1031, 1040 (9th Cir. 2002). We will reverse for plain error "only if clear error prejudiced the defendant's substantial rights so as to affect seriously the fairness or integrity of the judicial proceedings." *United States v. Savage*, 67 F.3d 1435,

1439 (9th Cir. 1995). Moreover, in order to reverse under the plain error standard, it must be "highly probable that the error affected the verdict." *United States v. Chang*, 207 F.3d 1169, 1175 (9th Cir. 2000) (quoting *United States v. Kessi*, 868 F.2d 1097, 1103 (9th Cir. 1989)). When reviewing jury instructions in particular, we consider the jury instructions as a whole in the context of the trial. *United States v. Mal*, 942 F.2d 682, 686 (9th Cir. 1991).

## A

**[13]** The district court's instructions did not violate Arreola's Sixth Amendment right to a unanimous jury verdict. Jury instructions based on a duplicitous indictment may permit a jury to render a guilty verdict "without having reached a unanimous verdict on the commission of a particular offense," in violation of a defendant's Sixth Amendment right to a unanimous jury verdict. *UCO Oil*, 546 F.2d at 835. However, this question is controlled by whether an indictment and resulting jury instructions charge two separate offenses in one count, or merely state multiple ways of committing the same offense. Having concluded that the statute defines a single offense, the indictment against Arreola was not duplicitous. Therefore, the jury instructions mirroring the language of the indictment did not violate Arreola's Sixth Amendment rights.

## B

There was no plain error in use of the jury verdict form.[2] Arreola argues that the use of the form amounted to a con-

---

[2] *Yeti by Molly LTD v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001), we held that failure to object contemporaneously to a verdict form waives the issue. However, *Yeti* is not controlling here because *Yeti* was a civil case. In criminal cases, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b). There is no corresponding rule in the Federal Rules of Civil Procedure.

structive amendment of the indictment in violation of his Fifth Amendment right to a grand jury.

**[14]** A defendant in a felony trial can only be convicted of charges upon which a grand jury has returned an indictment. An indictment is constructively amended where "the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *Streit*, 962 F.2d at 899-900. In this case, the jury verdict form erroneously permitted the jury to convict Arreola if it found that he possessed a firearm during and in relation to a drug crime, an act that § 924(c) does not criminalize. However, considering the jury verdict form in light of the court's instructions and the trial as a whole, it is not likely that error in the jury verdict form affected the jury's decision to convict.

**[15]** The trial judge properly instructed jurors that they could only convict if they found that Arreola "carried the firearm during and in relation to, or possessed the firearm in furtherance of the drug trafficking crime." The prosecutor and Arreola's counsel reiterated this requirement multiple times throughout their closing statements. The jurors had a copy of the instructions, correctly stating the requirements for a guilty verdict, in the jury room. We therefore hold that the verdict form did not constructively amend the indictment.

**AFFIRMED.**