**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 09 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10210 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00262-JCM-RJJ-3 |
| v. | |
| JUAN RODRIGUEZ, AKA Juan Rodriguez-Lopez, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted April 19, 2012
San Francisco, California

Before: GOODWIN, REINHARDT, and MURGUIA, Circuit Judges.

After a jury trial, Juan Rodriguez appeals from his conviction on three charges

and from the imposition of a 248-month prison sentence. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm the convictions but vacate the sentence and remand.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.**     Rodriguez challenges the jury instruction on the 18 U.S.C. § 924(c) charge. We review for plain error. *United States v. Arreola*, 467 F.3d 1153, 1161 (9th Cir. 2006).

Section 924(c) creates a single offense that may be proven by two theories: carrying a firearm during and in relation to a predicate crime, or possessing a firearm in furtherance of such a crime. *Id.* at 1157-61. The district court instructed the jury only on the "carrying during and in relation to" theory. Rodriguez argues that this was error because the government presented a "possession in furtherance" theory at trial. We disagree. While the government indicted Rodriguez on both theories, it had to prove only one in order to convict him. *United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002). The district court gave a sufficient instruction on the "carrying during and in relation to" theory, and the jury "is presumed to follow the instructions given to it." *United States v. Heredia*, 483 F.3d 913, 923 (9th Cir. 2007) (en banc). Rodriguez's argument therefore fails.

**2.**     Rodriguez challenges the sufficiency of the evidence to convict him of the conspiracy and § 924(c) charges. The standard of review is contested. We need not resolve whether our review is de novo or for plain error, however, as Rodriguez's challenge fails under even the more generous standard. The question before us is "whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt,'" *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc), and we answer that question in the affirmative.

There is no question that a conspiracy existed; the only question is whether Rodriguez participated in it. "The elements of drug conspiracy under the statute at issue are: (1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001). Three items of evidence are sufficient for the jury reasonably to have concluded that Rodriguez participated in the conspiracy.

First, the jury could have found from the testimony of Officers Guerra and Murray that Rodriguez observed the meeting at McDonald's from the Buffalo Bill's parking lot. It could have inferred that Rodriguez was providing surveillance and security for the meeting; otherwise, he would not likely have been sitting alone in a parking lot, away from his companions. *Cf. United States v. Penagos*, 823 F.2d 346, 348 (9th Cir. 1987). Rodriguez argues for the first time on appeal that video footage of the Chevron parking lot shows him parked there, rather than at Buffalo Bill's, during the meeting. Aside from the fact that he failed to make this argument to the jury, it is beside the point: our role is to determine not what actually happened but what the jury was permitted to find. The officers' testimony that they found Rodriguez

in the Buffalo Bill's lot after the meeting took place is sufficient circumstantial evidence for the jury to have found that Rodriguez was in that lot during the meeting.

Rodriguez's actions on the freeway also support his conviction. Several officers testified that Rodriguez accelerated to a high speed after his companions' vehicles were pulled over and that he took two miles to pull over once the pursuing officers activated their lights and sirens. "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself"; once the trial judge admits the evidence as relevant, its "probative value . . . is a question of fact for the jury." *United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986). The jury could reasonably have found that Rodriguez tried to evade officers and interpreted his having done so as evidence that he was a participant in the conspiracy, not an innocent bystander on a family trip to Las Vegas. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The presence of a loaded handgun in Rodriguez's car is the strongest evidence against him. Although Rodriguez testified that he was "pretty sure" the safety was on, and although the gun was holstered, it was otherwise ready to fire: Officer Zidzik testified that the hammer was cocked, that a round of ammunition was in the chamber, and that an apparently full magazine was attached. Zidzik's testimony that he heard an object strike the inside of the car door as he approached, and that only the gun could have made that noise, supports a finding that Rodriguez was holding the gun

just after being pulled over—not the act of someone who has simply forgotten about the presence of the gun after using it at a shooting range, as Rodriguez claimed he had, or who is along for an innocent family trip to Las Vegas.

Taken together and viewed in the light most favorable to the government, the evidence that Rodriguez surveilled the meeting at McDonald's, that he sped away from officers on the highway, and that he had with him a cocked and loaded handgun would allow a reasonable jury to find that he was guilty of the crimes with which he was charged. We reject Rodriguez's argument that the evidence was insufficient.

**3.** Rodriguez argues that the government breached its obligations by failing to preserve the clothing and toiletries found in his truck. We review de novo, *United States v. Flyer*, 633 F.3d 911, 915-16 (9th Cir. 2011), as Rodriguez preserved the claim.

Even assuming that the evidence in question was actually (rather than only potentially) exculpatory, or that the government acted in bad faith by failing to preserve it, Rodriguez's claim must fail unless he was "unable to obtain comparable evidence." *California v. Trombetta*, 467 U.S. 479, 489 (1984). That is not the case here. Although Rodriguez could not present the jury with the actual clothing and toiletries that he possessed at the time of his arrest, he was able to show a photograph of the clothing and toiletries in his truck, and the prosecutor conceded in closing

argument that the photograph "shows there's some clothing." Rodriguez is correct that the items in the photograph appear strewn about, rather than neatly packed as if for a vacation, but he does not explain why the retention of the physical items would have enabled him to show the jury any more effectively the condition in which they had appeared in his truck at the time of his arrest. The only evidence that would have been more useful to Rodriguez than the photograph he was able to present is one that showed the interior of the truck *prior* to the search, which disrupted the condition of his belongings. Rodriguez does not argue that such a photograph exists or that the government was obligated to take one. Because the photograph made available by the government was comparable in evidentiary value to the physical items that Rodriguez argues the government should have preserved, *cf. United States v. Bingham*, 653 F.3d 983, 994 (9th Cir. 2011), his claim fails.

**4.** Rodriguez argues that the admission of statements by the non-testifying confidential source ("CS") violated the Confrontation Clause. We review for plain error. *United States v. Matus-Zayas*, 655 F.3d 1092, 1098 (9th Cir. 2011).

Some of the statements to which Rodriguez refers were not statements by the CS at all. Rodriguez argues that the CS was the ultimate source of statements by two of the officers, but he cites no authority for the proposition that the Confrontation Clause requires the cross-examination of not only testimonial declarants but anyone

who may have made statements that contributed to those declarants' knowledge. Other statements were made by the CS but were admitted simply to establish the fact that they had occurred, or to provide context for other statements, rather than to establish the truth of the matter asserted. "The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

A handful of the CS's statements present a closer question. Although these statements were never read into the record or otherwise brought to the jury's attention by either side, they were included in the lengthy written transcript of the recording made from Officer Guerra's body microphone, which was admitted as evidence in its entirety. In one such statement, the CS speculates that "the owner of the work is the one in the black truck." In another, the CS says of Rodriguez: "Maybe he's protecting the work." Had the government actually referred the jury to these particular statements, they would clearly have been admitted for the truth of the matter asserted. As it is, they appear to have been admitted simply by inadvertence, because they happened to be included in a lengthy transcript only parts of which were meant to be brought to the jury's attention.

We need not decide whether these statements should be considered to have been admitted for the truth of the matter asserted, however, because the admission of the

statements—even if error—was not plain error. "[A]n error is not plain unless it is 'clear' or 'obvious," *United States v. Smith*, 424 F.3d 992, 1002 (9th Cir. 2005), and this was neither. The error must also have affected the defendant's substantial rights, which "in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). These statements were made by a source that the jury had little reason to trust. They were hypotheses, not firm conclusions. The government did not argue that Rodriguez owned the drugs. And although the jury had access to the full transcript during its deliberations, there is no reason to think that the jury took upon itself the task of examining portions that were never discussed at trial. The admission of the statements, even if erroneous, therefore did not affect Rodriguez's substantial rights or "'seriously affect[] the fairness, integrity, or public reputation of'" his trial. *Matus-Zayas*, 655 F.3d at 1098.

**5.** Rodriguez argues that because the CS was a witness, the government was obligated under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose material that would have allowed him to impeach the CS. Although Rodriguez did not present this claim to the district court, he argues that we should review it de novo. *Any* claim forfeited below is reviewed on appeal for plain error. *See Olano*, 507 U.S. at 731.

It may not be the case that Rodriguez's claim fails merely because the CS did not *testify* at trial. There is persuasive authority for the proposition that *Brady* and related obligations extend to non-testifying witnesses. *See United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003); *United States v. Flores*, No. CR 08-0730 WHA, 2011 WL 1100137, at *1 (N.D. Cal. Mar. 24, 2011).

We reject Rodriguez's argument, however, for the same reason as we reject his Confrontation Clause claim: even if a few of the CS's statements may have been admitted for the truth of the matter asserted, the admission of these statements did not affect Rodriguez's substantial rights, and if the *admission* of the statements did not violate Rodriguez's substantial rights, then the deprivation of his ability to *impeach* the statements cannot have violated his substantial rights. The statements are highly unlikely to have affected the outcome of the trial even if the jury fully credited them.

**6.**     Rodriguez challenges three instances of alleged prosecutorial misconduct during the closing argument. We review for plain error. *United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011).

First, Rodriguez contends that the prosecutor advanced a theory unsupported by the evidence. In particular, he challenges the prosecutor's arguments that a) he observed the McDonald's meeting from the Buffalo Bill's lot, b) he lied to the jury in stating that he had watched the meeting from the Chevron, and c) he lied to the jury

in denying, until confronted, that he had entered the Buffalo Bill's lot. As to the first two contentions, a prosecutor is free to "argue reasonable inferences based on the evidence." *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991). It is not true that the prosecutor lacked evidence to support the argument that Rodriguez observed the meeting from the Buffalo Bill's lot, and thus that he lied about observing it from the Chevron. As noted earlier, two officers testified that they saw Rodriguez's truck in the Buffalo Bill's lot when they followed the other vehicles into the lot. As to the third contention, the prosecutor did not say that Rodriguez *denied* entering the Buffalo Bill's lot, only that he did not *admit* to having done so until confronted. That statement is an accurate representation of the record.

Second, Rodriguez argues that the prosecutor vouched for Officer Guerra, citing the prosecutor's statement in rebuttal argument that the officer had "testified to [the jury] exactly what happened." In context, this was not vouching. Rodriguez's counsel had argued that a written report and recorded communications from the day of the incident failed to mention what Guerra described as an intent stare from Rodriguez in the Buffalo Bill's lot. The prosecutor argued, in response, that because Guerra had testified to that detail, its omission from the report and recordings should not be taken to mean that it did not occur. The prosecutor hardly insinuated to the jury that he personally knew what had happened in the parking lot.

Third, Rodriguez argues that the prosecutor mischaracterized evidence in three ways. One concerns the prosecutor's statements about the number of contacts between Rodriguez's phone and the two phones in the Explorer and about whether Rodriguez had spoken to both occupants of the Explorer or only to one. To the extent that the prosecutor misspoke about the number of contacts, his "misstatement has earmarks of inadvertent mistake, not misconduct," *United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994), and at the least does not constitute plain error. The record does not support Rodriguez's contention that the prosecutor implied he had spoken to both occupants of the Explorer. The second alleged misrepresentation is the prosecutor's claim that Rodriguez lied about whether he was traveling alone or with others to Las Vegas. Contrary to Rodriguez's argument, the jury could reasonably conclude from his testimony that he lied, and the prosecutor was permitted to argue that inference. The third alleged misrepresentation is a set of statements by the prosecutor concerning the relevance to the case of the clothing and toiletries found in Rodriguez's truck. We do not believe that any of these statements constituted a misrepresentation.

Fourth, Rodriguez argues that the prosecutor shifted the burden of proof by arguing that the jury should employ "reason and common sense" in evaluating Rodriguez's testimony and theory of the case. Rodriguez acknowledges, however, that the purpose of his "testimony was 'to create reasonable doubt about an element of the

offense in the mind of the jury.'" Appellant Br. 72. That acknowledgment shows why the prosecutor did not commit misconduct: he was simply arguing to the jury that the doubt sown by Rodriguez's testimony was not *reasonable* doubt at all.

We therefore reject each of Rodriguez's claims of prosecutorial misconduct.

**7.** Rodriguez argues in passing that his conviction should be reversed on the basis of cumulative error. "Even if no error individually supports reversal, the cumulative effect of numerous errors may support reversal." *United States v. Inzunza*, 638 F.3d 1006, 1024 (9th Cir. 2011). The cumulative error analysis is "inapplicable" to claims with respect to which "the district court did not err" at all, but we may consider errors that do not individually rise to the level of plain error. *United States v. Fernandez*, 388 F.3d 1199, 1256-57 (9th Cir. 2004). We conclude, however, that even if the district court committed one or more errors that did not rise to the level of plain error, these errors taken together do not require reversal.

**8.** Rodriguez raises three objections to his sentence—two of procedural error, one of substantive unreasonableness. We review "'the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and the district court's factual findings for clear error.'" *United States v. Grissom*, 525 F.3d 691, 696 (9th Cir. 2008).

First, Rodriguez argues that the district court failed to make the requisite factual findings before imposing a two-level perjury enhancement. We agree. "Before it may adjust defendant's sentence for obstruction of justice, the district court must find that: 1) defendant gave false testimony; 2) the testimony was on a material matter; and 3) defendant had 'willful intent' to provide false testimony." *United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007) (per curiam). The government concedes that the district court did not make such findings. The government contends that the error is harmless because Rodriguez's testimony must have been perjurious given the nature of its inconsistency with the verdict. This argument misses the point. "[A]s an appellate court, we are not in the business of making findings of fact," *Forest Grove School Dist. v. T.A.*, 638 F.3d 1234, 1238 (9th Cir. 2011), and we held in *Jimenez-Ortega* that under Supreme Court precedent, "the materiality of a false statement is one of the factual predicates of an obstruction enhancement," rather than "a purely legal question . . . that the court of appeals c[an] decide in the first instance." 472 F.3d at 1103. We therefore could not enter the requisite findings even if we were convinced that they were appropriate, because the power to make the factual findings required for a perjury enhancement lies within the exclusive province of the district court. We must therefore remand for resentencing.

Second, Rodriguez argues that the district court failed to appreciate its authority to vary from the Sentencing Guidelines or to consider the relevant sentencing factors under 18 U.S.C. § 3553(a). Rodriguez is correct that the district court acted *as if* it were bound by the Guidelines. The record provides no basis to conclude, however, that the district court did not recognize its authority to vary from the Guidelines, rather than simply preferring to adhere to them.

We also reject Rodriguez's argument that the district court failed to consider the § 3553(a) factors. The court's analysis of the factors was scant. Although the court discussed several elements of Rodriguez's background and characteristics, it did not tie those facts in any specific way to the factors. Under our precedents, however, "'a checklist recitation of the section 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable.'" *United States v. Mix*, 457 F.3d 906, 912-13 (9th Cir. 2006). The district court simply has to "explain [its sentence] sufficiently to permit meaningful appellate review," and the requisite degree of that explanation varies "depending upon the complexity of the particular case" and "whether the sentence chosen is inside or outside the Guidelines." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc). "A within-Guidelines sentence ordinarily needs little explanation." *Id.* In light of the above, we cannot conclude that the explanation the district court gave was insufficient.

Third, Rodriguez argues that his sentence is substantively unreasonable. We are sympathetic to this argument. Rodriguez is seventy-one years old, and his last prior offense was committed almost thirty years ago. The evidence in this case is far from overwhelming, and at most, Rodriguez was conducting surveillance and providing security; his vehicle contained no drugs. Under the mandatory minimum sentence of fifteen years, Rodriguez would not be released until well into his eighties. One might question whether a 248-month sentence is not "greater than necessary" to fulfill the objectives set forth in § 3553(a). Nevertheless, we are reluctant to vacate as substantively unreasonable sentences that fall within the Guidelines range, *see Carty*, 520 F.3d at 988, and will not do so here. The district court is free on remand, however, to consider the § 3553(a) factors anew, and in view of the considerations mentioned above, would be well within its discretion to do so.

**We AFFIRM the convictions, VACATE the sentence, and REMAND.**