**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10105 |
| Plaintiff - Appellee, | D.C. No. 3:12-cr-08135-JAT-1 |
| v. | |
| HARRY MCCABE, Sr., | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted June 10, 2014
San Francisco, California

Before: SCHROEDER, GRABER, and BYBEE, Circuit Judges.

Harry McCabe, Sr. appeals his conviction following a three-day jury trial of

assault with a dangerous weapon in Indian country, 18 U.S.C. §§ 113(a)(3), 1153,

assault resulting in serious bodily injury in Indian country, 18 U.S.C. §§ 113(a)(6),

1153, and two counts of use of a firearm in a crime of violence, 18 U.S.C. §

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

924(c)(1)(A)(iii). He challenges the denial of his motion to suppress a rifle found after a warrantless entry into his abode, alleges fault with the indictment, jury instructions, and verdict forms, and argues that the district court abused its discretion in making several evidentiary rulings. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

A.   *Warrantless Entry*

We review *de novo* whether the police officers had probable cause to arrest McCabe and whether exigent circumstances justified their warrantless entry into McCabe's hogan, a one-room abode in which he was staying. *United States v. Mancinas-Flores*, 588 F.3d 677, 687 (9th Cir. 2009); *United States v. Lopez*, 482 F.3d 1067, 1071 (9th Cir. 2007).[1]

"Exigent circumstances are defined to include 'those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" *Fisher v. City of San Jose*, 558 F.3d 1069, 1075 (9th Cir. 2009) (en banc) (alteration in original) (quoting *United States v.*

---

[1] Although the Fourth Amendment does not apply directly to tribal officers, the Indian Civil Rights Act imposes the same limitations. *United States v. Becerra-Garcia*, 397 F.3d 1167, 1171 & n.1 (9th Cir. 2005) (citing 25 U.S.C. § 1302(2)).

*Lindsey*, 877 F.2d 777, 780 (9th Cir. 1989)). And "[i]ncluded within this definition of exigent circumstances is '[t]he need to protect or preserve life or avoid serious injury.'" *United States v. Echegoyen*, 799 F.2d 1271, 1278 (9th Cir. 1986) (second alteration in original) (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)). "The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion." *United States v. Licata*, 761 F.2d 537, 543 (9th Cir. 1985).

Here, the police officers were lead to the site by the victim, who had been shot in the head. The district court properly concluded that the police officers had probable cause to arrest McCabe and that exigent circumstance justified their warrantless entry into the hogan. It was evening, and the remote area was dark, save for the lights from the police cars. Approaching the hogan with guns drawn, the police knocked and announced their presence in Navajo and English. They heard noises inside but no response to their calls. The police saw bloodstains on the side of the door, on a chair, and on the ground directly outside the hogan and did not know the condition of the occupant of the hogan. They reasonably believed the victim's statements that the occupant of the hogan had shot him and was still armed with a weapon that he could turn on the officers or others. *See United States v. Al-Azzawy*, 784 F.2d 890, 894 (9th Cir. 1985) (affirming warrantless entry where

officers reasonably believed defendant had explosives "and was in an agitated and violent state" based on uncorroborated statements by a witness who said defendant had threatened him with a pistol). Given "the remoteness" of the hogan, "the late night hour," and the distance to a magistrate and the police station, it was "fair to assume that a telephonic warrant would have taken quite some time to secure." *Echegoyen*, 799 F.2d at 1280. "Under these circumstances, . . . the delay associated with obtaining a telephonic warrant would have unduly increased the risk . . . that the officers reasonably believed to be [present]." *Id.* (second and third alterations in original) (internal quotation marks and citation omitted). Regardless of the condition of the victim who accompanied the officers to the hogan, the totality of the circumstances gave rise to the officers' objectively reasonable belief that the entry was necessary to prevent physical harm to the officers or other persons, render assistance, or to prevent "some other consequence improperly frustrating legitimate law enforcement efforts." *Fisher*, 558 F.3d at 1075 (quotation marks and citation omitted). As the district court found, "[e]nsuring that the gunman was no longer a danger to the public or the police themselves was of paramount importance." This case is not like *United States v. Gooch*, 6 F.3d 673, 676 (9th Cir. 1993), where the defendant was asleep in a tent and no one had been injured. *See Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1172 (9th Cir. 2003).

4

B.    *Rifle Seizure*

"In the context of searches incident to arrest and plain view searches, we review de novo the district court's application of established facts to legal standards." *United States v. Hudson*, 100 F.3d 1409, 1418 (9th Cir. 1996). Under *United States v. Lemus*, 582 F.3d 958 (9th Cir. 2009), the unrebutted, consistent testimony by the officers that they spotted the butt of a gun sticking out from underneath a mattress in the hogan is sufficient to establish that the weapon was visible under the plain view doctrine. *Id.* at 960, 964. McCabe argues that a comforter blocked the view of the rifle, but the evidence to which he points does not support that contention. The seizure of the rifle was also constitutional under the search-incident-to-arrest doctrine. *See Hudson*, 100 F.3d at 1419.

C.    *Indictment*

Where, as here, a defendant fails to object to an indictment as duplicitous before trial, we review for plain error. *See United States v. Arreola*, 467 F.3d 1153, 1161 (9th Cir. 2006).  McCabe argues that Counts 3 and 4 of the superseding indictment were duplicitous because they listed the three discrete penalty provisions set forth in § 924(c)(1)(A)(i)-(iii) in the same count.

"When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of

those acts conjunctively charged may establish guilt." *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009) (quoting *United States v. Urrutia*, 897 F.2d 430, 432 (9th Cir. 1990)). Accordingly, the indictment was not duplicitous when it listed those provisions in a single count. *See United States v. Vela*, 624 F.3d 1148, 1159 (9th Cir. 2010) (affirming a conviction in which additional elements of an offense were listed in a single count).

D.    *Jury Instructions*

Where, as here, the defendant did not object to the district court's jury instructions, we review a constructive-amendment claim for plain error. *United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006). McCabe argues that the jury instructions constructively amended the indictment regarding the § 924(c)(1)(A) counts because the instructions seemed to conflate the two statutory clauses of § 924(c) by including an extra word ("possessing") before the phrase "during and in relation to a crime of violence," when the statute instead bars possessing a firearm "in furtherance of" a crime of violence. *See* 18 U.S.C. § 924(c)(1)(A).

There was no plain error regarding the jury instructions since any error—such as it occurred—was harmless. *United States v. Thongsy*, 577 F.3d 1036, 1042–44 (9th Cir. 2009) (holding on *de novo* review that error was harmless where jury instruction "conflated the two clauses of § 924(c) by instructing the jury

6

that it could convict [the defendant] if it found that he 'possessed' a firearm (part of the second clause) 'during and in relation to the crime' (part of the first clause)"); *see also United States v. Nobari*, 574 F.3d 1065, 1080 (9th Cir. 2009) (holding conflating two statutory clauses of § 924(c) in jury instructions "did not 'seriously affect[ ] the fairness, integrity or public reputation of' the trial." (alteration in original) (citation omitted)).

E.    *Verdict Form*

Where, as here, a defendant did not object to the verdict form at trial, we review for plain error. *United States v. Pineda-Doval*, 614 F.3d 1019, 1031 (9th Cir. 2010) McCabe argues on appeal that the verdict form for Counts 3 and 4 confused the jury since it listed the several ways in which § 924(c)(1)(A) can be violated (i.e., using, carrying, possessing, blandishing, and discharging a firearm) and instructed the jury to "check all that apply." McCabe faults the instruction for not "explain[ing] to the jurors that *not only* were they supposed to unanimously agree on guilt or innocence of the § 924(c) charge generally, *but also* on the specific manner of committing that crime that may have triggered an increase in the punishment for that charge."

The plain error standard is not met here. Even assuming that the instructions were erroneous, there is no realistic probability that the error affected the verdict.

This case did not turn on a distinction among modes of using a firearm—the jury either believed that McCabe shot Woodie or that he did not. *See Arreola*, 467 F.3d at 1162 ("[C]onsidering the jury verdict form in light of the court's instructions and the trial as a whole, it is not likely that error in the jury verdict form affected the jury's decision to convict.").

F.      *Nurse Benko's Testimony*

We review for abuse of discretion the district court's decision to grant a deposition under Fed. R. Crim. P. 15(a) and to deny a motion to continue. *United States v. Matus-Zayas*, 655 F.3d 1092, 1098 (9th Cir. 2011); *United States v. de Cruz*, 82 F.3d 856, 860 (9th Cir. 1996). McCabe argues that the district court abused its discretion when it denied his motion for a continuance so Nurse Alison Benko could testify in person and ordered a videotaped deposition instead.

With regard to the videotaped deposition, the court's order was not requested by one of the parties and its decision was not couched in the precise language of Fed. R. Crim. P. 15(a), which allows for depositions because of "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). But, in light of the district court's articulated concern for judicial resources, the well-established practice of allowing videotaped depositions when live testimony would pose a hardship to the witness, and the deferential standard of

review, the district court did not abuse its discretion when it allowed Nurse Benko to testify by video deposition. *See Furlow v. United States*, 644 F.2d 764, 766–67 (9th Cir.1981) (per curiam).

With regard to the continuance, under the factors articulated in *United States v. Pope*, 841 F.2d 954, 956 (9th Cir. 1988)—which look to the requester's diligence, the likely utility of the continuance, the inconvenience to the court and the other side, and prejudice—the district court explained that it would be inconvenienced by a delay, and McCabe failed to demonstrate that he was prejudiced by the denial of a continuance. *See id.* at 958. Accordingly, we cannot say that the ordering of the video deposition or the denial of the continuance was "arbitrary or unreasonable" so as to merit a reversal under an abuse of discretion standard of review. *de Cruz*, 82 F.3d at 860 (quoting *United States v. Torres–Rodriguez*, 930 F.2d 1375, 1383 (9th Cir. 1991)).

G.    *Excited Utterance*

We review the admission of evidence under an exception to the hearsay rule for an abuse of discretion. *United States v. Johnson*, 297 F.3d 845, 862–63 (9th Cir. 2002). If "we conclude that a district court has wrongly admitted hearsay, we review for harmless error." *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995).

McCabe challenges the admission of a hearsay statement—of a neighbor who testified that the victim told her that McCabe shot him—under the excited utterance exception. Since the statement was made only about thirty minutes after the shooting, the victim's trauma was substantial, the victim displayed signs of agitation and distress, and the admission was harmless in light of all of the evidence, we conclude that the district court did not abuse its discretion by admitting the statement and, alternatively, that admission of the statement was harmless error. *See Leavitt v. Arave*, 383 F.3d 809, 830 (9th Cir. 2004); *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995).

**AFFIRMED**

United States v. McCabe, No. 13-10105

GRABER, Circuit Judge, dissenting:

I respectfully dissent from Part A of the majority's disposition. In my view, the officers' warrantless entry into the hogan was not justified by exigent circumstances.

"The Fourth Amendment prohibits police officers from making a warrantless entry into a person's home, unless the officers have probable cause <u>and</u> are presented with exigent circumstances." <u>LaLonde v. County of Riverside</u>, 204 F.3d 947, 954 (9th Cir. 2000). The government bears a "heavy burden" of proving exigent circumstances. <u>United States v. Licata</u>, 761 F.2d 537, 543 (9th Cir. 1985). The panel affirms the district court's holding that exigent circumstances supported the warrantless entry because the officers <u>reasonably</u> feared for their immediate safety and the safety of others. I disagree.

In no case have we held that officers may enter a home simply because a serious crime has been committed and the perpetrator is located within. The cases cited by the district court differ from this case because each of those cases involved a clear threat to others. <u>See, e.g.</u>, <u>United States v. Echegoyen</u>, 799 F.2d 1271, 1278 (9th Cir. 1986) (noting that the search was justified by the presence of "a potentially dangerous fire hazard," which the officers immediately acted to mitigate). Indeed, in <u>United States v. Al-Azzawy</u>, 784 F.2d 890, 894 (9th Cir.

1985), the defendant had stated that he possessed illegal explosives and had threatened to blow up a trailer park. Unlike a gun in a hogan in a very remote area, explosives in a residential area more clearly posed a threat to the safety of others—yet we found it a "close question" whether exigent circumstances existed in Al-Azzawy, id. at 894. The facts of this case are much more similar to those in United States v. Gooch, 6 F.3d 673, 679 (9th Cir. 1993), where we rejected the existence of exigent circumstances because the threat to others no longer existed by the time the officers arrived.

Here, other than momentary rustling that confirmed that Defendant was present, there simply was no evidence at all suggesting that anyone other than Defendant was inside the hogan, and the officers did not testify that they suspected a second person was present. Nor did the circumstances suggest that anyone else was in the hogan. The area was remote and sparsely populated, the hogan was quite small, and Woodie had told the police that only he and Defendant resided there. Because there was no way out other than the single door, there was no chance of escape or ambush. Because there were no windows, there was no chance that Defendant would shoot at the officers through a window. It is pure speculation that Defendant possibly could have located another victim at night in this remote area, brought the victim into the hogan, and continued to threaten the

2

victim such that rescue by the officers was required. Nor would waiting for a warrant outside the hogan, at a watchful distance, have increased the danger to the persons outside the hogan.[1]

The officers faced a potentially dangerous situation, and their desire to ensure the public's safety is a laudable goal. But the Fourth Amendment instructs that, when a person retreats to his home and no longer poses a threat of further harm, escape, or destruction of evidence, officers may not—without a warrant—enter the home solely to make an arrest. Because the government has failed to meet its heavy burden of demonstrating exigent circumstances, I would vacate the judgment, reverse the district court's denial of Defendant's suppression motion, and remand for further proceedings.

---

[1] To the extent that the majority holds that exigent circumstances existed because someone may have been injured inside the hogan, requiring emergency aid, the government waived that argument by not raising it in the district court. O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1063 n.3 (9th Cir. 2007). In any event, the argument is not persuasive for the same reasons: It was entirely speculative to think that someone else was in the hogan.

3